UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DENISE COVINGTON, | : | Case No. 1:08-cv-502 |
| Plaintiff, | : | Weber, J. |
| | : | Black, M.J. |
| vs. | : | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE ALJ UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g); AND (3) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding Plaintiff "not disabled," and, therefore, unentitled to a period of disability, disability income benefits and supplemental security income. (*See* Administrative Transcript ("Tr.") (Tr. 21-31) (ALJ's decision)).

**I. FACTS AND PROCEDURAL HISTORY**

On June 22, 2004, Plaintiff filed an application for disability insurance benefits and supplemental security income alleging a disability onset date of April 6, 2004, due to arthritis and back pain. (Tr. 53-55 & 105-106). Plaintiff later amended the onset date of

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

her alleged disability to October 6, 2004. (Tr. 329-331). Plaintiff claims her conditions render her disabled, entitling her to a period of disability, disability insurance benefits and supplement security income.

On June 26, 2004, her claims were denied on the state agency level. (Tr. 35-38). Thereafter, Plaintiff requested reconsideration. (Tr. 39). Plaintiff's claim was denied again on reconsideration. (Tr. 43-44). On January 31, 2005, Plaintiff requested a hearing *de novo* before an ALJ. (Tr. 45). Hearings were held on September 1, 2006 and May 21, 2007, at which Plaintiff appeared with counsel and testified. (Tr. 247-344). A vocational expert ("VE"), Dr. George Parsons, was also present and testified at the hearings. (Tr. 286-296; 338-344).

Along with the testimony elicited during the two hearings, a number of records were also provided for the ALJ's review. Included among the records submitted to the ALJ for the ultimate determination of Plaintiff's alleged disability were MRI reports from July 2004 and July 2006. (Tr. 99, 221). The July 2004 MRI report noted "L4-5 rightward broad foraminal and extraforaminal disk [sic] herniation of the bronchi type effacting the interior right L4 foraminal nerve root" and "[m]ild facet hypertrophy and L4-5 L5-S1 levels and rudimentary disk [sic] space due sickle sedations L5-S1." (Tr. 99) The July 2006 MRI conclusions state: "[m]oderate sized right froaminal disc protrusion at L4-L5 causing compression of the exiting nerve root and significant jeural foraminal narrowing on the right unchanged from the previous exam." (Tr. 221).

Also provided for the ALJ's review was a residual functional capacity ("RFC") form completed in May 2006 by Dr. Sinthusek, one of Plaintiff's treating physicians. (Tr. 182-183). In that form, Dr. Sinthusek concluded that, as a result of Plaintiff's condition(s), her work related abilities were limited, in that she: (1) could stand and/or walk for only one hour per workday, and for only thirty-minutes without interruption; (2) could sit for only two hours per workday, and could sit for two hours uninterrupted; (3) was extremely limited in bending; and (4) moderately limited in pushing, pulling and reaching. (Tr. 183).

Dr. Sinthusek also completed a "Physical Residual Functional Capacity Questionnaire" in June 2006, in which Dr. Sinthusek concluded that Plaintiff: (1) could walk less than one city block; (2) could sit for ten minutes at time before needing to get up; (3) could stand for ten minutes at a time before sitting down or walking around; (4) could stand and sit for a total of less than two hours per eight hour workday; (5) should walk every ten minutes for two minutes at a time; (6) should elevate her legs twelve inches when sitting for prolonged periods; (7) should only rarely lift anything under ten pounds and never lift anything over ten pounds; (8) should never twist, stoop, bend or climb stairs; (9) should rarely crouch, squat or climb ladders; and (10) would likely miss about four workdays per month as a result of her condition. (Tr. 185-189).

Plaintiff also provided a "Physical Residual Functional Capacity Questionnaire" completed in August 2006 by Dr. King, another alleged treating physician. (Tr. 214-218).

Dr. King concluded that Plaintiff: (1) could sit for fifteen to twenty minutes at time before needing to get up; (2) could stand for fifteen to twenty minutes at a time before sitting down or walking around; (3) could stand for a total of less than two hours per eight hour workday; (4) could sit for a total of about four hours per eight hour workday; (5) should walk every fifteen to thirty minutes for three to five minutes at a time; (6) did not need to elevate her legs when sitting for prolonged periods; (7) should only rarely lift anything ten pounds or under and never lift anything over ten pounds; (8) should rarely twist, stoop, crouch or squat; and (9) should never climb ladders or stairs. (Tr. 214-218).

Finally, the ALJ was given records completed by Dr. Richard Sheridan, who examined the Plaintiff on November 8, 2006, at Defendant's request.[2] (Tr. 228-242). Dr. Sheridan found a reduced range of motion in Plaintiff's lumbar spine during his examination of Plaintiff. (Tr. 237). Dr. Sheridan also noted that he reviewed two MRIs conducted of Plaintiff's spine; one performed in July 2004, the other in July 2006. (Tr. 233). After his examination of Plaintiff and a review of her records, Dr. Sheridan recommended a diagnosis of chronic lumbar strain, lumbar degenerative disc disease without clinical evidence of radiculopathy and chronic cervical strain. (Tr. 233-234). Dr. Sheridan also noted that, because of Plaintiff's conditions, she "requires restrictions." (Tr. 233-234).

Specifically, with regard to Plaintiff's work-related limitations, Dr. Sheridan

---

[2] According to Plaintiff, Dr. Sheridan examined her for approximately five minutes. (Tr. 296).

concluded that Plaintiff: (1) could lift, push and/or pull fifty pounds occasionally and twenty pounds frequently; (2) stand and/or walk for about six hours per eight hour workday; (3) sit for about six hours per eight hour workday; (4) climb and stoop occasionally; (5) balance, kneel, crouch and crawl frequently; and (6) only occasionally reach. (Tr. 239-241).

The ALJ ultimately relied on Dr. Sheridan's RFC assessment. (Tr. 28). Based on that RFC, the VE testified that Plaintiff was able to perform all of her past relevant work, and, therefore, was not disabled. (Tr. 29, 286-288).

On June 21, 2007, the ALJ entered his decision finding Plaintiff not disabled. (Tr. 21-31). The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant meets the nondisability requirements for a period of disability and disability insurance benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's chronic lumbar strain and lumbar degenerative disc disease, but without clinical evidence of radiculopathy, and her chronic cervical strain are considered "severe" based on the requirements in the regulations at 20 CFR §§ 404.1520(c) and 416.920(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the residual functional capacity for the full range of work, except that she is only able to lift and carry 50 pounds occasionally and 20 pounds frequently. The claimant is able to sit, stand, and walk about six hours each in an eight hour workday, and she can frequently balance, kneel, crouch, and crawl. The claimant can occasionally climb ramps and stairs and occasionally stoop. She has limited ability to reach in all directions and can occasionally reach and frequently handle, finger, and feel. The claimant has limited ability to be around vibration and hazards such as machinery and heights.

7. The claimant's past relevant work as a cook, production molder, and machine presser both as she performed those jobs and as they are typically done in the national economy, and as a fast food worker as that job is typically done, did not require the performance of work-related activities precluded by her residual functional capacity. 20 CFR §§ 404.1565 and 416.965.

8. The claimant's medically determinable impairments do not prevent her from performing her past relevant work.

9. The claimant was not under a "disability" as defined in the Social Security Act at any time through the date of this decision. 20 CFR §§ 404.1520(f) and 416.920(f).

(Tr. 30). The ALJ concluded that Plaintiff was not entitled to a period of disability or disability insurance benefits, and further determined that she was "not eligible for supplemental security income payments[.]" (Tr. 31). That decision became Defendant's final determination upon denial of review by the Appeals Council on June 3, 2008. (Tr. 6-8).

On appeal to this Court, Plaintiff argues that the ALJ erred: (1) in determining her RFC; (2) in finding her testimony not credible; and (3) in failing to find that she was disabled based on the medical-vocational guidelines.

## II. ANALYSIS

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978).

If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (internal citations omitted).

### A. First Assignment of Error

In her first assignment of error, Plaintiff contends that the ALJ erred in giving

great weight to the RFC opinion of Dr. Sheridan over the RFC opinions of her treating doctors, Dr. Sinthusek and Dr. King. All three doctors recognized that Plaintiff had cervical and lumbar spinal conditions, as evidenced by MRI results from July 2004 and July 2006. However, the doctors differed on the extent of limitations the condition had on her ability to work. *See* 20 C.F.R.404.1529(c)(1). Plaintiff argues that the opinions of Dr. Sinthusek and Dr. King are entitled to controlling weight, and that the ALJ erred in relying solely on Dr. Sheridan's opinion because it is flawed and contradicts objective evidence.

As a general rule in social security disability cases, opinions of treating doctors are given greater deference than opinions given by non-treating doctors. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). This rule is "commonly known as the treating physician rule." *Id*. (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004)). The rationale behind the treating physician rule is that, "treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone[.]'" *Rogers*, 486 F.3d at 242 (citing 20 C.F.R. § 416.927(d)(2)).

In determining the matter, an ALJ must specifically set forth "good reasons" for discounting the treating physician's conclusions. *Rogers*, 486 F.3d at 242. Such reasons

must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. (citing Soc. Sec. Rul. 96-2p, at *4). An ALJ's failure to explain "precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243 (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2nd Cir. 1999)).

In weighing differing medical opinion evidence, an ALJ considers the factors set forth in 20 C.F.R. § 404.1527(d)(2). Under that regulation, "the opinion of a treating physician is entitled to controlling weight if such opinion (1) 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques,' and (2) 'is not inconsistent with the other substantial evidence in [the] case record.'" *Meece v. Barnhart*, 192 Fed.Appx. 456, 460 (6th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(2)).

Here, there is clearly a great contrast in Dr. Sheridan's RFC determination and the determinations of Dr. Sinthusek and Dr. King, despite no dispute that Plaintiff suffers from objectively established chronic lumbar and cervical conditions. The Sixth Circuit has found that a treating doctor's opinion is not entitled to controlling weight where the treating doctor's determination of disability conflicts with the consulting physician's determination. *See Meece*, 192 Fed.Appx. at 463. As a result, the opinions of Dr. Sinthusek and Dr. King are not entitled to controlling weight.

However, even if a treating physician's opinion is not entitled to controlling

weight under 20 C.F.R. § 404.1527(d)(2), the ALJ must determine what weight to give differing medical conclusions by applying the remaining factors listed in 20 C.F.R. § 404.1527(d). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece*, 192 Fed.Appx. at 461 (citing 20 C.F.R. §§ 404.1527(d)(2) - (d)(6)).

Here, the ALJ accorded "no weight" whatsoever to the RFC conclusions of Dr. Sinthusek and Dr. King because "none of their . . . statements is well supported." (Tr. 27-28). Specifically, the ALJ noted a "lack of significant clinical signs consistent with disabling lower back pain[,]" and stated that "[n]either Dr. Sinthusek's nor Dr. King's treatment notes show clinical signs consistent with the various severe limitations they placed on the claimant." (Tr. 27).

Dr. Sinthusek's first RFC form, completed in May 2006, lists no "[p]hysical/psychological/psychiatric findings" in support of the RFC conclusion. (Tr. 182). Dr. Sinthusek does, however, list observations and/or medical evidence supporting his conclusion, specifically, Plaintiff's MRI from July 2004, which showed disc herniation at L4, as well as Plaintiff's subjective complaints that she cannot sit for long

periods and suffers from pain and stiffness while walking. (Tr. 182). Dr. Sinthusek's second RFC form, completed in June 2006, expressly notes no "clinical findings or objective signs." (Tr. 185).

Dr. King's RFC questionnaire, completed in August 2006, notes a tender lumbar spine and a limited range of motion in Plaintiff's upper left extremity. (Tr. 214). However, Dr. King further noted that the limited range of motion was "unlikely related to disc herniation." (Tr. 214). Because the only related clinical finding noted on these three RFC forms, beyond the 2004 and 2006 MRI findings establishing the underlying condition, was tenderness of the lower back, it cannot be said that the ALJ's finding that minimal clinical findings supported their RFC opinions was error.

Plaintiff argues that her medical records support her doctors' opinions because she "complained of chronic back pain, leg pain and arthritis pain as early as July 8, 2004." While the records cited by Plaintiff show complaints of pain, those notes merely reassert her subjective complaints (Tr. 83, 90, 160, 166, 173, 207, 226, 246), which the ALJ discounted after determining she was not credible.[3] (Tr. 25-27).

As a result, the ALJ could properly reduce the weight given to the RFC questionnaires completed by Dr. Sinthusek and Dr. King, because both failed to detail or document sufficient clinical findings to support their conclusions about the extent of Plaintiff's work limitations. The Sixth Circuit has repeatedly stated that an "ALJ 'is not

---

[3] The appropriateness of the ALJ's determination of Plaintiff's credibility is addressed in response to Plaintiff's second assignment of error.

bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.'" *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984)). Thus, insofar as the ALJ lessened the weight accorded the opinions of Dr. Sinthusek and Dr. King, there is no error.

However, the next issue addressed by Plaintiff is whether the ALJ erred in accepting Dr. Sheridan's RFC determination. Plaintiff argues that Dr. Sheridan's RFC conclusion is flawed as contrary to objective medical evidence. Plaintiff essentially argues that Dr. Sheridan's opinion itself is "unfounded," in that it fails to explain how Plaintiff's reduced range of motion in the lumbar spine and her objectively established spinal conditions only minimally limit her work-related abilities.

Dr. Sheridan examined Plaintiff one time at Defendant's request. According to Plaintiff, the examination lasted five minutes. (Tr. 296). During the examination, Dr. Sheridan did find a reduced range of motion in Plaintiff's lumbar spine. (Tr. 237). However, Dr. Sheridan fails to explain the significance, or insignificance, of such finding.

In addition to the physical exam of Plaintiff, Dr. Sheridan also reviewed Plaintiff's July 2004 and July 2006 MRI results and ultimately diagnosed Plaintiff with chronic lumbar strain, lumbar degenerative disc disease without clinical evidence of radiculopathy and chronic cervical strain. (Tr. 233-234). In conclusion, Dr. Sheridan noted that, because of Plaintiff's conditions, she "requires restrictions." (Tr. 233-234). However,

the restrictions set forth by Dr. Sheridan were not as severe as those set forth by Dr. Sinthusek and Dr. King, and ultimately, were not disabling.

In concluding that Dr. Sheridan's RFC opinion was more credible, the ALJ noted that Dr. Sheridan's physical examination was "more thorough" than the examinations conducted by either Dr. Sinthusek or Dr. King, and more consistent with the mild/non-existent clinical signs noted by Plaintiff's treating doctors. (Tr. 28). The Sixth Circuit has noted that the mere fact that a consultative examining doctor's report appears "more detailed" is insufficient grounds, on its own, to discount the opinion of a treating doctor where very few of the details relate to the claimant's claimed disability. See *Meece v. Barnhart*, 192 Fed. Appx. 456, 462 (6th Cir. 2006).

Here, Dr. Sheridan's report is very detailed. (Tr. 228-233). However, Dr. Sheridan's report provides no explanation as to how any or all of the detailed findings lead to his ultimate opinion regarding Plaintiff's RFC. In fact, despite finding a reduced range of motion in Plaintiff's lumbar spine (Tr. 237), diagnosing Plaintiff with chronic lumbar strain, degenerative disc disease and cervical strain (Tr. 233-234), and noting that Plaintiff requires restrictions (Tr. 234), Dr. Sheridan provided only a lightly restricted RFC. (Tr. 239-242). It is unclear how any of Dr. Sheridan's findings suggest Plaintiff's ability to stand or sit for any length of time, or her ability lift objects of any particular weight.

Just as in *Meece*, while Dr. Sheridan's "report observed the many ways in which

-13-

Plaintiff was not disabled, the report failed to confront or challenge Plaintiff's claimed disability," *i.e.*, her lower back pain. *Meece*, 192 Fed. Appx. at 462. As a result, reliance on Dr. Sheridan's opinion simply because his examination appears more thorough, without any explanation as to how any of the findings support his RFC opinion, was error.

Aside from the alleged thoroughness of Dr. Sheridan's examination, the ALJ noted that Dr. Sheridan's findings were "very consistent with the generally mild or nonexistent clinical signs found, or in some cases not found, by the claimant's treating medical sources." (Tr. 28). Again, while Dr. Sheridan's examination returned many normal results, the examination notably returned less than normal ranges of motion in Plaintiff's lumbar spine, i.e., her alleged disabling condition. (Tr. 237).

Dr. Sheridan, and in turn the ALJ, failed to address exactly what these results mean or how they impact, or fail to impact, the extent of Plaintiff's work-related limitations. As a result, Dr. Sheridan, while noting limited range of motion in Plaintiff's lumbar spine and diagnosing Plaintiff with chronic lumbar strain, lumbar degenerative disc disease and chronic cervical strain, failed "to confront or challenge Plaintiff's claimed disability," her lower back pain. *Meece*, 192 Fed. Appx. at 462.

Instead, the ALJ was left to speculate as to what clinical findings in Dr. Sheridan's report support his conclusion that Plaintiff can lift, push or pull fifty pounds occasionally and twenty pounds frequently, stand and/or walk for about six hours per workday, sit for about six hours per workday, occasionally climb and stoop, and frequently balance, kneel,

crouch and crawl. (Tr. 239-242). While it is the ALJ's prerogative to resolve conflicts and weigh the evidence of record, an ALJ is not permitted to act as his own medical expert in making a credibility assessment. *See Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985); *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983); *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir. 1975) (holding that "[a]n administrative law judge may not draw upon his own inferences from medical reports").

Thus, while the opinions of Dr. Sinthusek and Dr. King may have properly been accorded less weight because little or no clinical findings were listed in their RFC forms, in light of the equally conclusive opinion of Dr. Sheridan, their opinions were, at the least, entitled to some weight under the factors set forth in 20 C.F.R. § 404.1527(d). Because the ALJ failed to give sufficient and specific justification for accepting Dr. Sheridan's equally conclusory determination, the ALJ's RFC determination is not supported by substantial evidence.

Accordingly, Plaintiff's first assignment of error should be sustained. This matter should be remanded for the determination of an accurate and supported RFC finding.

### B. Second Assignment of Error

In her second assignment of error, Plaintiff contends that the ALJ erred in finding part of her testimony not credible. "In evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "[A]n ALJ's findings based on the credibility of the

applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id*. "Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Id*.

Here, the ALJ determined that Plaintiff's testimony regarding the severity of her pain was not credible, in part. In reaching this conclusion, the ALJ found that: (1) Plaintiff received unemployment insurance benefits conditioned on the ability to be ready and willing to work; (2) Plaintiff provided contradicting testimony regarding her termination from her last job; (3) Plaintiff testified that, had she not been terminated in April 2004, she would have tried to work; and (4) Plaintiff was uncertain as to when she ultimately became disabled. (Tr. 25-27).

Here, the record supports the grounds relied upon by the ALJ in finding Plaintiff's testimony not credible. Plaintiff conceded that she was willing and able to work up until October 2004, despite initially claiming a disability onset before that date. (Tr. 323-330). Plaintiff did testify that she believed she was able to do the work for her former employer at the time of her termination in April 2004. (Tr. 322-324). Even for a period thereafter, she was able to work and looking for work. (Tr. 322-324). Further, Plaintiff was unable to even roughly pinpoint a period of time when she allegedly became disabled. (Tr. 328).

With regard to Plaintiff's April 2004 termination, her testimony is indeed contradictory. In September 2006, Plaintiff testified that she was terminated from her job

because she allegedly missed three days. (Tr. 317-318). At that time, Plaintiff testified that she only missed one day, and could not call in that day because her phone was disconnected. (Tr. 320-321). In May 2007, however, Plaintiff changed her story and testified that she was terminated after missing two days of work despite having called in those days. (Tr. 255-258).

As a result, there is substantial evidence upon which the ALJ could question the credibility of Plaintiff. Accordingly, Plaintiff's second assignment of error is without merit and is overruled.

### C. Third Assignment of Error

In her third and final assignment of error, Plaintiff argues that the ALJ erred by failing to find her disabled based on medical-vocational guidelines. As noted by the Sixth Circuit, "[t]he Commissioner carries the burden of proving that a claimant who cannot perform his past work has the residual functional capacity to perform other work in the national economy." *Anthony v. Astrue*, 266 Fed.Appx. 451, 460-461 (6th Cir. 2008) (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir.1990). In order "[t]o carry this burden, the Commissioner may rely either on the testimony of a VE who evaluates a claimant's ability to perform work in light of the claimant's limitations or the SSA's medical-vocational guidelines." *Anthony*, 266 Fed.Appx. at 461 (citing 20 C.F.R. §§ 404.1520, 416.920).

In other words, an ALJ uses the medical-vocational guidelines "to assist in

determining whether a claimant can perform other work at step five of the sequential evaluation." *Sandborn v. Comm'r of Soc. Sec.*, No. 1:07cv1190, 2009 WL 126340 (W.D. Mich. Jan. 16, 2009). Thus, the medical-vocational guidelines are not applicable where the ALJ determines that the claimant is capable of performing past relevant work. *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 110 (6th Cir. 1989).

Because the ALJ ended the analysis of Plaintiff's claims at step-four, application of the medical-vocational guidelines was never triggered. Accordingly, Plaintiff's third assignment of error is overruled. However, in light of the disposition of Plaintiff's first assignment of error, her RFC must be reassessed and application of the guidelines may become applicable on remand.

### III. REMAND

A sentence four remand provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175. "It is well established that the party seeking remand bears the burden of showing that a remand is proper under Section 405." *Culbertson v. Barnhart,* 214 F. Supp. 2d 788,

795 (N.D. Ohio 2002) (*quoting Willis v. Sec'y of Health & Human Servs.,* 727 F.2d 551 (6th Cir. 1984)).

## IV. CONCLUSION

Based upon the foregoing, the undersigned concludes that remand is appropriate in this matter because there is insufficient evidence to support the ALJ's decision. **IT IS THEREFORE RECOMMENDED** that the decision of the Commissioner to deny Plaintiff DIB and SSI benefits be **REVERSED**, and this matter be **REMANDED** under sentence four of 42 U.S.C. § 405(g).

On remand, the Commissioner shall reassess Plaintiff's RFC and provide an accurate RFC determination.


Date:  August 11, 2009                s/ Timothy S. Black
                                      Timothy S. Black
                                      United States Magistrate Judge

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
```

| | | |
|---|---|---|
| DENISE COVINGTON, | : | Case No. 1:08-cv-502 |
| | : | |
| Plaintiff, | : | Weber, J. |
| | : | Black, M.J. |
| vs. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **TEN DAYS** after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to **THIRTEEN DAYS** (excluding intervening Saturdays, Sundays, and legal holidays) when this Report is being served by mail and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **TEN DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).